All right, we call the next case C. C. Individually and through his next friend versus Hearst Euless Bedford Independent School District and we hear first from Mr. Kirkl. I really appreciate and always do the opportunity to participate in oral argument and to be before this court not only for its legal analysis but importantly for its wisdom and this is a case that calls out for both. I promised my clients I would do something. Notwithstanding the time I really want to thank Mr. Mrs. Crips who without their commitment to justice for their child and now as we have traveled together on this path together for quite some time for other children as well and regarding what we call the schoolhouse to the jailhouse pipeline. I also promised them that I would talk a little bit about their son himself because. Unfortunately he has been somewhat demonized in the local media in the Dallas Fort Worth area. All that to the issues in this case I will really want you to get to the issues as quickly as you can. I will. I will. Your honor will only be frank. I'm going to be direct. The school district's position is this is that if someone comes along and makes an allegation that a child committed rape. Or worse and then later it's determined that no such act occurred and that the juvenile justice authorities have investigated the case and determined there is no felony there's no misdemeanor. Well excuse me but you're dealing in a hypothetical and you know that's not what CC was accused of. I'm sorry I'm not sure I understand. He was not accused of rape. No he was accused of a felony. Yes. And in the hearing they found that he did something but the fact that the prosecutor chose not to go forward doesn't mean anything. Well due respect your honor I guess I'm here to argue otherwise. Well OK. And I respectfully disagree. The school district's position. I'm sorry your honor. Did CC admit taking the photograph. Yes sir. Yes sir. But I'm past that. I want to, you asked me direct to get to the point. I want to get to the point. The point is, is that the school district's position is that if you make an allegation against a child, in this case a felony against CC for taking pictures. And later on the juvenile justice authority comes along and says there's no felony, there's no misdemeanor, there's no nothing. We're not going to prosecute the case, we're not going to defer the case, we're not going to adjudicate the case. We're not going to do anything, we're going to let the case go. And then the school district says, you know what, we don't care what the juvenile justice authority says. We don't, not that we have to change the placement your honor, which is not exactly what I'm saying. I'm saying they have a duty under the constitution, they have a duty under Texas law, and they have a duty under special education law to review that placement. And that's the position, because otherwise, you could have school districts all over Texas, all over Louisiana, all over Mississippi, hundreds of them, with thousands of principals making allegations against kids. And then, when the juvenile justice authority declares- We're not talking about an unsubstantiated allegation. I mean, you're making much of a prosecutorial decision. That's separate and apart from what the school district has to deal with. Don't you agree? Absolutely correct, your honor. You're absolutely correct. What I'm saying is what- So a decision about whether to prosecute is not tantamount to a decision that nothing wrong happened, isn't that right? That's correct. You don't want to talk about what happened though, you want to talk about the prosecutor's decision. If I get to that, I want to talk about the duty that school districts have for children with disabilities to review placement decisions. But they found that the misconduct here was not connected to CeCe's disabilities. That's correct, your honor. That's correct. The district court, yes, and you appealed that, and then the district court found, you know, no error in that decision, as I understand it. That's correct, and we have not appealed that, your honor. You didn't really challenge that, did you? No, sir. But I mean, you know, the Texas Educational Code provision says that any student who engages in conduct punishable as a felony on school grounds shall be removed from class and placed in a disciplinary alternative education program. I'm not arguing that, your honor. That speaks to conduct. It doesn't speak to conviction or indictment or anything else. I'm not fighting that, your honor. I'm past that. What I'm saying is after, as a child was receiving special education services, the standard that we use in this district is the Michael F versus Cy Fair Independent School District Standard. It has four different elements. The first element is whether or not the child received services in the least restrictive environment. Another element is whether the school district, including key stakeholders and the parents, have collaborated in providing and reviewing that child's educational plan. Another part has to do with whether it's academic or non-academic benefit. And another element, your honor, has to do with whether or not the educational plan is commensurate with that child's unique and individualized needs. And I submit to you that while at one time in the story, at one time in the narrative, he committed a crime, and the school district believed he committed a crime, and the school districts have an absolute right under the education code to make that determination, what they don't have a right to do is not reconsider information that's brought forward after that. Because notwithstanding the issue that offended someone about the allegation of rape, the truth of the matter is, if somebody gets an allegation for the rape, like we saw with kids in the East Coast, it happens all over, and it turns out that they are innocent or the case is dropped, their position is we don't have to review that kid's placement. We could keep them out of school and we don't care. But I don't understand what would they have done if they had reviewed, I mean, you're talking about the placement into the alternative program for 60 days. That's correct, your honor. What else would they have done with him? I'm not saying they didn't have a right to place him there. I am saying that once they received new information, they had a duty under- I'm sorry, your honor. What was the new information? New information was that the Juvenile Justice Authority had refused to prosecute the case. I mean, think about- But that's not what, what's required is that it's an offense which is punishable. Like a felony. I guess the best image I can use to respond to you, your honor, is there's what's called input, throughput, and output. The input side of the story, I'm not disagreeing with today. What I'm saying is once they make a decision that the child needs to be placed in the DAP, so be it. But they also have a duty under the Constitution to review it, under Texas law to review it, and more importantly, as a child with a disability to review it. And they had a duty to decide that what they had already determined happened didn't happen? No. No, that's- What would have been the purpose of a subsequent review? Well, in special education law, a child's supposed to have their placement reviewed every year, minimally, which occurred in August of the following months. And they have to have, and also the rules, the underlying code of federal regulations and the statutory enabling legislation requires the school district to set up what's called an admission review and dismissal committee to review changes that children have, whatever their needs might be. Sometimes their health needs, you know, a kid gets sick and then they get well, they have mental health issues or they have to be removed from class or from school for a minimum period of time. So I think the Texas education code speaks more to regular education children, children without disabilities. We, in this case, have something quite different. We have a child with a disability that has special rights under the disability, individual disabilities education act. And the school district, who has a duty to fulfill that act, has to look at the changing needs of the child. Those changing needs- Can I just ask- I'm sorry, Your Honor. I mean, the whole premise, you've already conceded that you don't dispute what the result, that there was a finding unappealed that there was no connection between his misconduct and his disability. So how can you be before us arguing that his disability gives him special immunity from the consequences that would follow for any non-disabled student? I didn't say he should have immunity. Pardon me? I didn't say he should have immunity. Well, he gets an extra layer of review. Well, he absolutely does. That's what federal law requires. Well, no, it doesn't. I mean, when you said that the misconduct is not related to his disability. We're not talking about the misconduct. We're talking about the duty that the school district has to review his educational placement based, one, upon annual issues, and two, changing needs. Now, clearly, things changed. It's one thing to say- But you didn't place them in a more restrictive environment? Well, the short answer is we don't know what the school district would have done because he never had that opportunity. They could have done lots of different things. They could have- Wait a minute. I would- I'm sorry. They could have sent him to an alternative school. They did. Same as they would have done for a non-disabled child, right? Correct. So you want them to treat him more restrictive? I want him to be treated fairly under the law, and that's what he did not get. Under the law, he has certain due process rights, both on federal law and constitutional law. You have to ask the question, what's the rational purpose? What's the rational basis for having a law or a rule or a standard or a practice that lets a school district place a child, criminalize behavior? And that's really what we're talking about here, which is part of this whole policy issue and trying to wrestle through the weeds and get to the wisdom here. We have an issue in this country of children with disabilities disproportionately placed in the criminal justice system. We know that. It's all over the papers. It's something that we have to deal with. It's not just a case about my client. This is a case about kids, and this is what happens with the Fifth Circuit. When you make a decision, you affect children everywhere. This child was not placed in the criminal justice system. No, he was not. The DA decided not to prosecute. That's correct, Your Honor, and that- Tell me what law was not followed here. It's called the Individuals with Disabilities Education Act. Where in that act does it say he's entitled to another hearing? I didn't say he's entitled to another hearing. What is he entitled to? He's entitled to what's called Admission, Review, and Dismissal Committee Meeting. Under the law, he's required to have that meeting annually, and under the law, he's also based upon the discretion of what's called the Art Committee, which includes the teachers and the parents and other what we call key stakeholders to review changing information. Clearly, this is changing information. Well, he wasn't changed. He was only in that school for three months. What changed was the legal issue. He was no longer criminalized. He no longer had the imprimatur of a crime. Why isn't that irrelevant under the Texas Education Code, whether he's been indicted or tried or convicted or whatever? My answer to that, Your Honor, is it's a supremacy clause. But alternative schools are not simply for people who have been adjudicated as juvenile felons. They are for people who are removed from the public school because they're thought to be a danger to the rest of the students. Frankly, this kid appears to have been a danger. Well, respectfully— Or at least to order and discipline. Um, respectfully, I disagree. I disagree with that. But, you know, I know the young man. So the point is—and I want to go back to something else Your Honor said. I didn't waive anything here. I'm not saying that how they handled this was correct. I think they handled it wrong. I think that the little boy certainly did not have an expectation of privacy in this. But I really wanted to talk about the bigger issue, and that is, once again, under federal law, he has an absolute right to have his placement, which was a DAP, reviewed in a timely manner and an annual manner. They failed to do it. And not only did they fail to do it, they said they didn't have to do it. If you have any more questions, I'll be happy to answer. Okay. Thank you very much, Your Honor. Thank you. Thank you very much, Your Honor. Amy Walker. Good afternoon. I'm Meredith Walker, and I am pleased to represent Hearst-Ulis-Bedford Independent School District. I'm going to jump right into the jurisdictional issue that you've been discussing with counsel, and that is that we do not believe that this court or the special education hearing officer or the district court had jurisdiction to wade into the issue regarding whether C.C. engaged in conduct punishable as a felony and whether the art committee should have revisited that issue. The Texas Education Code is very clear. Under Section 37.006, it states, as Your Honors are aware, that when a student engages in conduct on campus, and that's the important point here under Section A, on campus that is conduct punishable as a felony, they are entitled to a mandatory placement in the district's alternative education program. Now, under Section 37.009A of the Texas Education Code, if the school district has a policy or a procedure to allow for an appeal of a DAEP placement, and the board of trustees or the board's designee makes a decision on that, that decision regarding the alternative education program is final and not subject to appeal. That's what the Texas Education Code says. And because of that, we don't believe that the court has jurisdiction to even wade into this issue. Now, while opposing counsel tries to couch this as a special education issue, the fact of the matter is, is that once the ARD committee, the Admission Review and Dismissal Committee, determined that the conduct that CC engaged in, which was taking pictures of another student using the bathroom on school property, once they determined that that was not a manifestation of his disabilities, and they determined that his individual education program, his IEP, could be implemented in the alternative education program, and that he could receive the services there, the ARD committee was done. This became a general education decision. Now, while opposing counsel and plaintiffs argue to the court that we've somehow impugned CC's character by leaving this alleged felony conduct on the record, the fact of the matter is, is that when you look at the Stevens versus Trinity case, which the district cited in its brief, that court found that it did not have jurisdiction to review the DAEP assignment of a student who was not even arrested for the conduct that the school district believed that he engaged in, because he engaged in conduct that the school district believed was punishable as a felony. And I think, Justice Graves, when you were saying that there's a prosecutorial discretion that they're looking at, and I think that's a very good point, because when you're looking at whether to prosecute a student or prosecute an individual, they have a burden of proof that's beyond a reasonable doubt. Obviously, that burden of proof does not apply to the school district. And there's also other provisions of the Texas Education Code that deal with conduct that happens off of school property. And the Texas Education Code has specifically put in provisions that when conduct occurs off of school property that's punishable as a felony, that the school district does have to review that kind of conduct, because they did not see it with their own eyes. But when conduct occurs on school property, the Texas legislature has determined that the school district is the one that gets to decide what to do with that. Can I ask you a question? I mean, I heard you say that we don't have jurisdiction, but the district court issued a 30-some page opinion. So, did you tell the district court he didn't have jurisdiction? I did absolutely tell the district court that he did not have jurisdiction, and the district court determined that he did not need to reach the jurisdictional issue, because he did not believe that it was relevant to the decision that he was making. He believed that the issue of whether CC engaged in conduct punishable as a felony and whether the art committee should have reviewed it was irrelevant, because that was not within the purview of the art committee in the first place, and so the district court did not reach the jurisdictional question. I'm sorry, I don't know if you're saying jurisdiction by jurisdiction. I mean federal court jurisdiction. Yes, and I raised it in the court. The district court specifically said that, what I just told you, your honor, which was because the issue of whether CC engaged in conduct punishable as a felony was not an issue for the art committee, that the court specifically stated in his order that he was not reaching the jurisdictional issue. So we believe he reached the right decision. We just don't believe he got there the right way. Well, you don't believe he should have gotten there at all. That's exactly right. We don't believe the special education hearing officer should have gotten there, and we don't believe that the district court should have gotten there. So you're saying we should reverse with instruction. We should reverse with or vacate with and remand with instructions to dismiss. On that specific issue, yes, because there's also the issue of when you look at the IDEA and you're looking at whether CC was provided with a free appropriate public education under the Individuals with Disabilities Education Improvement Act, you have to look at the four factors. Well, plaintiffs have woven this argument of having to review CC's conduct and whether it was punishable as a felony and whether he should have remained in DAEP. They've woven that into the factors that this court looks at. But we don't believe that even when you weave them into this, even if the court found that you had jurisdiction, we don't believe that that gets them there because even looking at it, it's clear that the district still provided him, still provided CC with a FAPE. For instance, one of the factors that you look at is whether CC demonstrated positive academic and non-academic benefit. Well, when you look at Rowley, Rowley says that you have to determine whether the IEP is reasonably calculated to provide the student with FAPE. So when you're looking at that first factor, you can't lose sight of the fact that the IDEA does not guarantee any particular level of education. So the question is whether the IEP was reasonably calculated. Well, when the ARD committee met, the ARD committee included CC's parents. Everybody agreed. The ARD committee ended in consensus. And everybody was happy with CC's IEP until CC got in trouble for taking pictures of another student in the bathroom. It was at that point that CC's parents cried foul and said, there's an issue with the IEP. But they haven't shown you any issue with the IEP. There's no argument or contention that there's a problem with CC's IEP. Their problem is, is that CC remained or would have remained. I'll be clear. CC never actually served a single day in the DAEP, ever. And so I'm sorry, but we understand. I under, anyway, you don't, your conclusion in prayer says nothing about vacating and remanding. It says to the extent the court finds it proper to exercise jurisdiction over all issues raised by CC, blah, blah, blah, you know, affirm. Yes. So you're not seeking a dismissal? Well, again, the district court, while we don't believe that he should have reached the issue as to whether CC engaged in conduct as a, engaged in conduct punishable as a felony, and the court really never reached that issue because he said it was irrelevant. Plaintiff's counsel and plaintiffs are still bringing it up in front of this court. And so our position is still that the court does not have to weigh into that issue because the court does not have jurisdiction over it. But then when you look, again, at the FAPE factors that the Fifth Circuit applies, he was clearly provided with a FAPE. So, with respect to the positive academic and non-academic benefits of CC's IEP, CC only attended school for 14 days following the implementation of his IEP. It was implemented on February 1st. The district found out about the picture taking on February 21st. He did not return to school after that fact, or after that date. And then his parents withdrew him on March 4th. And so, the fact that CC's parents did not return him from school or return him to school deprives the court of the ability to see how he would have progressed under his IEP that was implemented. However, in the short time frame that he was there, the behavioral specialist testified that he would have progressed under it. In fact, he doubled the frequency of turning in his work on time, and the measures used to address his tardies were effective where he was no longer tardy, and he was benefiting from the social skills. Now, CC's IEP was also implemented in a coordinated and collaborative manner. In fact, the district would say that it was the epitome of coordination and collaboration. The evaluation team met with CC's parents to review the FIE before the ARD committee meeting, and Vice Principal Emery worked with CC on disciplinary referrals. The ARD committee considered input from multiple individuals, not only CC's parents, but also CC's advocate. They worked with him to ensure that he could remain in band. So they did all the things they should have done to work with CC and his family. In fact, CC's father expressed that the meetings with the district were generally positive and that he had no issues with the school until CC was disciplined for taking pictures of another student. In fact, he also acknowledged the efforts by the district by specifically testifying, quote, everybody in the parties were trying to help, both sides, and teachers, administrators, everybody. So it's clear that even CC's parents thought that the district was cooperating with them and collaborating with them until CC engaged in conduct that the school district could not overlook. And in today's technological world, it's just a fact of the matter is that when a student takes a picture of another student on their cell phone, that's not something a junior high administrator can overlook. As fast as text messages spread and the effects that they can have, that's something that the school district has to take seriously. Now, in response to that, plaintiffs argued that there was a hostile educational environment that CC was being subjected to. And the district submits to you that there's no evidence in the record of that. In fact, again, going back to CC's father's testimony, he testified that CC did not return to Bedford Junior High because of the severity of the charges, not because CC was being subjected to a hostile educational environment, and not because CC was being denied a free appropriate public education by the district. In fact, when you look at the record, and there's quite a few places in there, around pages 1701, 1702, 1704, 1705, 1718, and 1720 to 21, you'll see all of those instances in which Vice Principal Emery and Principal Herbo were working with CC on his disciplinary referrals. While plaintiffs argue that there was a conspiracy to kick CC out, which is why they determined that he engaged in conduct punishable as a felony, the fact of the matter is, is that well before that happened, they had ample opportunity to send CC to the alternative education program. Ample opportunity. But instead of doing that, they were coupling his disciplinary referrals together. You refer to prior infractions? Yes, prior infractions. There's one specific incidence, and I believe it's at 1720-21, where he engaged in three different incidents on three different days. I want to say it was January 28th, 29th, and 30th, and each one of those could have warranted a separate placement in DAEP, and instead of giving him those separate placements where he would have been sent to a long-term DAEP assignment, they coupled them together and gave him one consequence. So if the district truly had wanted to get rid of him, as plaintiffs allege, they had the opportunity to do so. But it wasn't that they wanted to get rid of him. That's not what it was at all. They were working with him. It's that you can't, again, like I said, overlook the fact that he took pictures of another student using the bathroom. Now, plaintiffs also argue that the ARD committee, again, it goes back to this issue, should have reviewed the fact that he was not going to be charged by the juvenile justice authorities. Now, there's no evidence in the record that the juvenile justice authorities ever actually informed the school district that they were not going to pursue charges, but even assuming that the ARD committee knew that they were not going to file charges, there was no obligation to review the DAEP assignment for the reasons I've already told you. Once the ARD committee determined that his conduct was not a manifestation of his disabilities and determined that his services, his IEP, could be implemented in the alternative education program, the ARD committee was done with it at that point. As a matter of fact, when you look at the IDA's implementing regulations, they specifically provide, it's at 34 CFR 300.530C, it says that if a student with a disability violates the student code of conduct and the conduct is not a manifestation of the student's disabilities, then school personnel may apply relevant disciplinary procedures to CC in the same manner and for the same duration as procedures would be applied to students without disabilities. So while plaintiffs are arguing for an extra layer of review for CC, the fact is is that once the manifestation determination is made and it's made that it was not a manifestation of his disabilities, which again is not before this court because it's not being appealed, then CC is treated like every other student. There's no additional review for him, not even by the ARD committee. And while plaintiff continues to argue that the ARD committee should have reviewed it, the fact is is that it wasn't relevant to his IEP. It had to do with location, not his actual services. And under White versus Ascension Parish, you look and that case says that educational placement are the services that you're receiving, not the location where those services are being received. The JJ or the Juvenile Justice Authority was also not a stakeholder for purposes of CC's ARD committee, but had plaintiffs wanted to have the Juvenile Justice Authorities there, that was well within their purview to ask for the Juvenile Justice Authorities to come, but there's no evidence in the record that they did so. But they're certainly not a key stakeholder. And we brief for the court on pages 53 and 54 of the district's brief who the key stakeholders are. Juvenile Justice Authority is not one of those individuals. And also, Article 15.27 of the Code of Criminal Procedure does not transform the Juvenile Justice Authority into a stakeholder as a matter of law. I think it's important for the court to look at 37.006, where it talks about getting the Juvenile Justice Authorities, and it specifically says, in determining whether there's a reasonable belief that a student has engaged in conduct defined as a felony by the penal code, the superintendent's designee may consider all available information, including information furnished under Article 15.27. So the Texas legislature says that you may consider it, not that you have to consider it. But then if you're looking at statutory construction, the only places where the words reasonable belief are found are actually under 37.006C and D. And that, again, goes back to conduct that occurred off campus. And we're not discussing conduct that occurred off campus. We're discussing conduct that occurred on campus. Because it's undisputed that he took the pictures of the student using the bathroom at school. Also, CC's IEP was implemented in a least restrictive environment. Again, the ARD committee looked. He was still in a general education placement. He was still with general education students. He still had the inclusion support. He had everything his IEP needed. It just happened to be in a different location that plaintiffs were not happy with. And CC's IEP was absolutely individualized on the basis of his assessment and performance. We've briefed that for the court as well. Plaintiffs did not brief that for the court. But when you look at it, the multidisciplinary team conducted his FIE using a variety of assessment tools and strategies. There were trained and knowledgeable personnel that did that. He was assessed in all areas of suspected disability. Yeah. Yeah. So if the court doesn't have any other questions for me, that's all I have. And for those reasons, we'd ask that you affirm the district court's decision. Thank you. Thank you. Okay, Mr. Circle. Thank you, Your Honor. The test of whether a government action is rationally related to a legitimate governmental interest was set forth in San Antonio School District v. Rodriguez many years ago, 1973. Consistent with this interpretation, the Fifth Circuit has stated that a school official has to show a rational relationship between a punishment and an offense that was set in Brewer v. Austin ISD, 1983. 1985. I think we need to take a look and see if whether there's a rational relationship between the placement in a DAP when there's no offense and there's no review. Think about that for a second. They're saying you don't have the right to review this. You had a full hearing. No, no. What I'm saying is that she brought up the issue about jurisdiction. I'm saying you don't have a right to review any of this. Now, in my estimation, when there's constitutional issues and due process involved and there's special education law, which is a federal issue involved, you absolutely have a right to do it. In fact, not only do you have a right to, you have a duty to. I'm going to set that aside for a second. They rely a lot on state law for their position that they don't have to review. I'm not talking about changing placement. I'm just talking about a right to review, okay? Is that Article 1527 of the Code of Criminal Procedure says that when the Juvenile Justice Authority knows that they're not going to litigate a case or prosecute a case, they have to let the school district know within two days. What's the message there? That as a public policy issue, our legislators want kids in school. That if they're not going to be put in jail or put in the Juvenile Justice Authority at all, we want them back in the regular educational environment as soon as possible. And we certainly want it reviewed. Now, the Texas Education Code back in 37-006, which they mentioned, and then 37-009, which we have in our reply brief, says very, very specifically, this is state law, state law, that if the placement is being addressed, when school starts for the next year, they have an absolute duty to review it. And they didn't do it. So even the argument that they're relying upon for state law fails them. The Constitution fails them, state law fails them, and the Individuals with Disability Act fails them. We're not talking about the placement that they made in the first instance, Your Honor. We're talking about the right to have it reviewed when there's changing circumstances. And once again, the Constitution permits it, requires it, I'll say. State law certainly requires it. And special education law does as well. One thing I don't want to lose has to go back to the underlying way in which the decision was made. At some point, you'll go back to your offices and you'll get a chance to review a number of items in the record. And the one thing I would ask you to do is to look at the pictures of the young man in the bathroom. I'd like you to read the hearing officer's decision. I want you to read the hearing officer's decision who says that he totally relied upon the credibility of the vice principal in making his decision. And then I'd like you to review the testimony of that vice principal. And you will see that the vice principal was not truthful, that what he says was in those pictures were not in those pictures. Now, once again, I wanted to argue the big picture here today, the public policy, the schoolhouse, and the jailhouse issue. But I think at some point, the underlying items and facts and evidence that brought my client to that moment also are infirmed. We ask you, Your Honor, to, we didn't get a chance to talk about this much, but in my last 39 seconds, under Stewart v. Waco ISD, the court, sua sponte, sent the case back to a hearing officer. An administrative exhaustion had never been brought up. The school district and their district court never brought it up. They never even brought it up before the Fifth Circuit. And the Fifth Circuit Court of Appeals sent that back to the hearing officer for reasons a lot less forceful than the ones I bring to you today. And once again, I want to thank you very much for letting me be here today. Thank you. Thank you, Your Honor.